J-A29037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: M.J., FATHER | : | |
| | : | |
| | : | No. 443 WDA 2022 |

Appeal from the Order Entered April 13, 2022,
in the Court of Common Pleas of Allegheny County,
Orphans' Court at No(s): CP-02-AP-0000057-2021.

| | | |
|---|---|---|
| IN THE INTEREST OF: J.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: ALLEGHENY COUNTY OFFICE OF CHILDREN, YOUTH, AND FAMILIES | : | |
| | : | No. 540 WDA 2022 |

Appeal from the Order Entered April 13, 2022,
in the Court of Common Pleas of Allegheny County,
Family Court at No(s): CP-02-AP-0000057-2021.

| | | |
|---|---|---|
| IN THE INTEREST OF: J.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.K.B., A/K/A J.B., A MINOR CHILD | : | |
| | : | No. 541 WDA 2022 |

Appeal from the Order Entered April 13, 2022,
in the Court of Common Pleas of Allegheny County,
Orphans' Court at No(s): CP-02-AP-0000057-2021.

BEFORE: BENDER, P.J.E., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:           **FILED: FEBRUARY 3, 2023**

In this matter, M.J. (Father) appeals the order entered by the Allegheny County Orphans' Court, which involuntarily terminated his rights to his three-year-old son, J.B. (the Child), pursuant to the Adoption Act. *See* 23 Pa.C.S.A. § 2511(a)(8) and (b). The Allegheny County Office of Children, Youth and Families (CYF or the Agency) had also petitioned for termination under Section 2511(a)(2) and (a)(5), but the orphans' court ruled that CYF had failed to meet its burden under these other subsections. CYF cross-appeals the denial of termination under Section 2511(a)(2) and (5). The Child, through his appointed representation, also cross-appeals the court's denial, but only as to Section 2511(a)(2).[1] After review, we affirm the orphans' court decision to terminate Father's rights under Section 2511(a)(8) and (b). Because we need only agree with the court's decision as to any one subsection under Section 2511(a), as well as Section 2511(b), we dismiss the cross-appeals as moot.

We summarize the factual and procedural history as follows: The family came to the attention of CYF when the Child tested positive for cocaine at birth. CYF removed the Child from parental care in July 2018 and petitioned

_____

[1] The orphans' court also involuntarily terminated the rights of C.B. (Mother). She did not appeal.

- 2 -

for dependency. The juvenile court adjudicated the Child dependent on August 3, 2018 and placed the Child in foster care. At the time of the adjudication, the identity of the Child's father was unknown.

Father became involved in this case in January 2019. The juvenile court ordered Father to achieve certain goals to aid with reunification. The goals were to: bolster parenting skills through coached parenting services; address intimate partner violence issues; engage in continued mental health treatment that addressed dual-diagnosis issues;[2] and resolve his criminal matters. Father also had to address his alcohol issues by providing negative screens.

Throughout the dependency proceedings, Father was cooperative with CYF. Father was consistent with his medication management and his psychiatric care. Father also visited with the Child. By December 2019, Father was permitted unsupervised and overnight visitation. But that same month, Father was charged with multiple offenses following an incident of domestic violence, where Mother was the victim. Father was charged with felony strangulation, misdemeanor simple assault, summary harassment and summary public drunkenness. Father was placed on probation for one year, prohibited from violent contact with Mother, ordered to complete DNA registration, prohibited from possessing a firearm, ordered to complete batterer's intervention, and ordered to undergo a drug and alcohol evaluation.

---

[2] Father reported that his mental health issues included anxiety, depression, and post-traumatic stress disorder.

CYF filed a petition to terminate Father's rights in March 2021. As Father complied with the dependency and criminal cases, he eventually achieved unsupervised visitation again. However, in September 2021, Father was charged with driving under the influence following a car accident. Father refused to provide a blood sample, and charges were apparently dropped, but the incident necessitated that the visits revert to being supervised.

The orphans' court held the hearing on March 29, 2022. During the hearing, the court heard the testimony of Father, the CYF caseworker, and the psychologist who evaluated Father. Thereafter, the orphans' court granted CYF's petition to terminate Father's rights under Section 2511(a)(8) and (b); the court determined that CYF had not met its burden under Section 2511(a)(2) and (a)(5). Specifically, the court determined that CYF did not prove that Father "cannot or will not" remedy the causes that led to the Child's dependency. These appeal and cross-appeals followed.

Father's appeal presents the following issues:

1. Did the trial court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8)?

2. Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Father's parental rights would best serve the needs and welfare of the Child pursuant to 23 Pa.C.S.A. § 2511(b)?

Father's Brief at 7.

CYF's cross-appeal presents the following issue:

> Did the Agency prove, by clear and convincing evidence, the grounds for the involuntary termination of Father's parental rights to the Child, J.B., pursuant to 23 Pa.C.S.A. §§ 2511(a)(2) and (a)(5)?

CYF's Brief at 5.

Through his representation, the Child's cross-appeal presents the following issue:

> Whether the trial court abused its discretion and/or erred as a matter of law in denying CYF's petition to terminate Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) after CYF presented clear and convincing evidence that grounds for termination existed?

Child's Brief at 9.

We begin with our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 265 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving…the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports that trial court's conclusions; the appellate could should not search the record for contrary conclusions or substitute its judgment for that of the trial court."). The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination." *In re P.Z.*, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re C.S.***, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting ***Matter of Adoption Charles E.D.M., II***, 708 A.2d 88, 91 (Pa. 1998)).

These appeals implicate Sections 2511(a)(2), (5), (8) and (b), which provide:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> [...]
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> [...]
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
>
> [...]
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of

removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

[...]

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (5), (8), (b).

Critically, we may uphold a termination decision if any proper basis exists for the result reached. *C.S.*, 761 A.2d at 1201. We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

We begin with Father's appeal, and thus our focus turns to the orphans' court decision under Section 2511(a)(8). To terminate parental rights under Section 2511(a)(8), the petitioner must prove: (1) the child has been removed from parental care for 12 months or more from the date of the removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and

welfare of the child. *In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

With respect to any petition filed pursuant to subsection (a)(8), "the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b). Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused the placement, or the availability or efficacy of the services provided by the local children and youth agency. *K.Z.S.*, 946 A.2d at 759 (citation omitted).

Here, there is no question that CYF satisfied the first prong of the analysis. The Child was removed from parental care at birth. Approximately 45 months elapsed between the Child's removal and the termination hearing – three times as long as the statutory mandate.

The second prong asks whether the conditions which led to the Child removal continue to exist. In its thorough Pa.R.A.P. 1925(a) opinion the orphans' court explained that it determined CYF satisfied the second prong, notwithstanding Father's substantial compliance:

> At the time of adjudication, Father was not involved – upon his participation in the proceedings, the court entered numerous orders establishing his goal and setting attendant requirements. Initially, Father was to complete coached parenting and intimate partner violence classes, continue his mental health treatment, and comply with any recommended drug and alcohol treatment recommendations. As the case progressed and Father's struggles with alcohol came to light, completing dual

diagnosis treatment and resolving his criminal matters were added as goals. [… T]wo months prior to the filing of the TPR petition […] Father's compliance was listed as "substantial." From that point forward, Father's compliance was consistently reported as "substantial" until October of 2021 when his compliance was downgraded to "moderate," seemingly coinciding with Father's criminal charges involving a DUI incident.

In accordance with the showing of general compliance with his goals throughout the life of this case, the evidence revealed that Father had more or less complied with the orders of the court directing him to engage services. However, Father was noncompliant in one most important area – addressing his underlying substance abuse issues with alcohol. Compliance with drug and alcohol treatment was court ordered from the beginning of Father's involvement in the case, and initially he was compliant.

Importantly though, as time passed, Father's struggles were revealed. He sounded intoxicated on phone calls with caseworkers, he appeared intoxicated during a domestic violence incident with Mother, and he was charged with a DUI offense to which he and counsel stipulated to the underlying facts. Father was also evasive about his alcohol use with Dr. Bliss [(the psychologist who conducted the evaluation)], which made it challenging for her to effectively evaluate his treatment needs. Father admitted that he was aware of the requirement that he complete substance abuse treatment. The only steps toward completing drug and alcohol or dual-diagnosis treatment that Father took were after the date of the first scheduled TPR hearing on March 16, 2022. Father's last ditch effort to comply with treatment for his alcohol use cannot be considered and is arguably irrelevant given the lengthy duration of this case – he had more than sufficient opportunity to address these concerns.

It is unclear from the record what steps the Agency, through [the CYF caseworker], took to assist Father in engaging with dual-diagnosis treatment. Absent from [the caseworker's] testimony was any discussion of *how* the Agency worked with Father to alleviate the circumstances that led to the Child's removal and stood between Father and reunification. Whether the Agency had engaged in reasonable efforts throughout the life of the case is not a subject upon which

- 10 -

this [trial judge] can opine as it did not oversee the underlying dependency proceedings, but the testimony of the caseworker calls into question how much support was provided to Father.

Nonetheless, given the above, the court justifiably concluded that the evidence established the first two elements required by 23 Pa.C.S.A. § 2511(a)(8).

TCO 16-18 (style adjusted) (citations to the record omitted).

On appeal, Father argues that CYF did not satisfy the second prong of the Section 2511(a)(8) analysis, because it did not prove that the conditions which led to the Child's placement continued to exist. He claims he had participated in mental health treatment, and that the reason he did not accomplish his alcohol treatment goal was because the service provider could not provide treatment for his dual-diagnosis needs. He explains that the service provider could not accommodate him, because of staffing shortages resulting from the COVID-19 pandemic. *See* Father's Brief at 15-16. Moreover, Father alleges that his delay in treatment did not pose a concern for CYF, as evidenced by the fact that CYF never claimed that he was intoxicated during a visit with the Child. *Id.* Father concludes his argument by noting the Agency's lack of assistance in helping him find suitable treatment in a timely manner.

In our review, we observe that the orphans' court was persuaded by Father's argument that his delay in treatment was excusable and that perhaps CYF bore some of the blame. The court found that CYF did not meet its burden under Section 2511(a)(2), because that subsection asks whether the causes

- 11 -

of the Child's dependency "cannot or will not" be remedied. The court determined that CYF could not prove that element by clear and convincing evidence. *See* T.C.O. at 20-21. Similarly, the court determined that CYF failed to meet its burden under Section 2511(a)(5). That subsection expressly inquires into the services or assistance that was reasonably available to Father to ask the larger question of whether the conditions leading to placement can be remedied. The orphans' court was not satisfied with the Agency's testimony regarding its services and assistance.

However, the orphans' court was not persuaded by Father's arguments as to its analysis of Section 2511(a)(8). The court was cognizant that the question of Father's ability to remedy the conditions and of CYF's reasonable efforts had limited applicability in a Section 2511(a)(8) analysis. We discern no issue with the court's approach.

As our Supreme Court noted in *In re D.C.D.*, 105 A.3d 662, 672 (Pa. 2014), neither Section 2511(a) nor (b) requires a court to consider the reasonable efforts provided to a parent prior to the termination of parental rights.

The High Court explained:

> [T]his Court has observed that the provision or absence of reasonable efforts may be relevant to a court's consideration of both grounds for termination and the best interests of the child. For example, as applicable to subsection (a)(2), a court may find an agency's lack of assistance to a parent relevant to whether a parent's incapacity "cannot or will not be remedied by the parent." […]

> Further, while we acknowledge that other states have included reasonable efforts as either an element or merely a factor in their termination provisions, the Pennsylvania legislature has not incorporated reasonable efforts into the language of 23 Pa.C.S.A. § 2511(a)(2), and it would be improper and, indeed, unwise for this Court to add such an element to the statute by judicial fiat. In contrast, we recognize that the legislature included consideration of the reasonable services available to the parent in regard to another ground for termination, subsection 2511(a)(5) (providing consideration of whether "the services or assistance reasonable available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time.").

*D.C.D.*, 105 A.3d at 672-73 (citations omitted); *see also* 23 Pa.C.S.A. § 2511

*cf.* 42 Pa.C.S.A. § 6351(f)(9) (concerning matters to be determined at the permanency review hearing, including whether the agency has provided the family with necessary services).

Having concluded that the orphans' court's approach to Section 2511(a)(8) was proper, the question remains: did the conditions which led to the Child's placement continue to exist? The orphans' court determined that Father's alcohol abuse was a condition that led to the Child's placement and was the primary barrier to reunification. The court further determined that Father's first meaningful steps toward alcohol treatment occurred days before the termination hearing. Thus, the court ruled that the conditions that led to the Child's placement continued to exist. To be sure, the orphans' court carefully considered Father's reasons for why he did not obtain appropriate treatment sooner. While the court apparently found Father's reasons to be

persuasive insofar as Section 2511(a)(2) and (a)(5) were concerned, the court did not have to factor his reasons into its analysis of Section 2511(a)(8).

Moreover, the orphans' court was not persuaded by Father's attempt to downplay the alcohol issue. Father claimed that the Agency was not concerned about whether he appeared intoxicated during the visits with the Child. Father seems to argue that because he substantially complied with the rest of his permanency plan, and because his alcohol use was a minor issue, the court's termination was unwarranted. The orphans' court was not moved by this argument, and neither are we. To the extent that the Agency was confident Father would be appropriate during the visits, it does not follow that the Agency was unconcerned with Father's alcohol abuse. Ultimately, we discern no abuse of discretion, nor error of law on this second prong of the Section 2511(a)(8) analysis.

Having concluded that the orphans' court properly determined that CYF established the first two prongs of the Section 2511(a)(8) analysis, we address the court's conclusions under the third element: whether termination best served the needs and welfare of the Child. Father challenges the court's best interest analysis under Section 2511(a)(8) contemporaneously with his challenge to the court's best interest analysis under Section 2511(b). Thus, we do the same.

Both analyses consider "intangibles such as love, comfort, security, and stability." *In re I.J.*, 972 A.2d 5, 12 (Pa. Super. 2009) (citation omitted). The court "must also discern the nature and status of the parent-child bond, paying

- 14 -

close attention to the effect of permanently severing the bond." *I.J.*, 972 A.2d at 12 (citation omitted). In performing a "best interests" analysis:

> The court should also consider the importance of continuity of relationships to the child, because severing close parental ties is usually extremely painful. The court must consider whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. Most importantly, adequate consideration must be given to the needs and welfare of the child.

*Id.* (citations omitted).

This Court has explained further:

> [S]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.,* 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Concerning the bond, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. *See C.M.K.*, 203 A.2d at 264 (citation omitted); *see also K.Z.S.*, 946 A.2d at 764 (holding there was no bond worth preserving where the child

had been in foster care for most of the child's life, which caused the resulting bond to be too attenuated). Moreover, the court is not required to use expert testimony to resolve the bond analysis. *In re Z.P.*, 994 A.2d 1108, 1121 (citing *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008)).

"Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 71 A.3d at 268. Finally, we emphasize that "[w]hile a parent's emotional bond with her and/or her child is a major aspect of the Section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted).

In its Rule 1925(a) opinion, the orphans' court thoroughly set forth its findings:

> The evidence in this matter supports this court's conclusion that the Child's bond with Father is not significant enough that the Child will suffer extreme emotional consequences from termination of Father's parental rights. The only evidence regarding a bond between Father and the Child is found in Dr. Bliss's report of June 21, 2021, which states that at that time, they did not have a close parent-child bond, but that they could very likely foster one over time. This court also gave great weight to Dr. Bliss's testimony that there would be concerns with removing this Child from his primary attachment [with the foster mother]. In June of 2021, Dr. Bliss stated that reunification remained a viable goal. [At the time of the termination hearing in March 2022, Dr. Bliss] no longer believes that to be the case.
>
> The timeline of this case as well as the uncontradicted expert testimony presented at the termination hearing drive

- 16 -

the analysis of this factor. By the date of the TPR hearing, the child had been in placement for approximately 45 months. The Child's primary bond, resembling that of a parent and child, is with his foster mother, D.M. Dr. Bliss further testified that based upon the interactional evaluation of Father and Child, there was not a significant bond between the two – despite Father's demonstrated age-appropriate play and direction with the Child.

In addition to the potential harm to the Child and separating him [from] the only parent figure that he has known, the Child's need for permanency also militates in favor of termination. If reunification were to occur, Father's history makes it unlikely that reunification would be permanent. This court must defer to the judgment of those who presided over this case during the dependency phase and could properly gauge the likelihood of success of any permanency strategy. During the three years that the Child was in care of a foster parent, Father never demonstrated to the satisfaction of the court that he was capable of unsupervised visits for any significant length of time. This court also gave great weight to Dr. Bliss's opinions regarding Father's inability to independently parent his Child. Father's inconsistent approach to his own health and safety demonstrate that he cannot provide the reliable support and attention that a child needs. The Child's need for safety, permanency, and stability outweighs the potential benefit to him of maintaining his relationship with Father and, further, that termination of Father's parental rights best serves the Child's needs and welfare.

T.C.O. at 25-27 (style adjusted) (citations to the record omitted).

In his Brief, Father argues that the orphans' court's best interests analyses under Section 2511(a)(8) and (b) were erroneous. In our view, Father takes primary aim at the weight that the court afforded certain aspects of Dr. Bliss's testimony. He highlights that portion of the testimony that indicates he is an appropriate parent, with whom the Child enjoys spending time. *See* Father's Brief at 20-21.

Father misunderstands our appellate function. The abuse-of-discretion standard in terminations cases is highly deferential, and we must affirm the lower court's decision even when evidence exists that would support a contrary determination. *See P.Z.*, 113 A.3d at 849. This Court may not search the record for contrary conclusions or substitute its judgment for that of the orphans' court. *See S.K.L.R.*, 265 A.3d at 1124. Rather, our function is merely to review the record to determine whether it supports the decision of the orphans' court. *Id.*

Upon such review, we conclude the record supports the determinations of the orphans' court. The history of Father's alcohol abuse supported the court's determination that permanent reunification would not transpire any time soon. In other words, the court properly determined that the Child's need for permanency was superior to whatever detrimental effect that termination might have. Moreover, the record supports the court's weighted consideration of the relationship that the Child has with the foster parent. We do not overlook Father's efforts, and we recognize the positive relationship he maintained with the Child. But Father's efforts do not distract us from the fact that he has never been the Child's caregiver. Instead, it is foster parent with whom the Child has developed a primary attachment.

In sum, we conclude that the orphans' court did not err or abuse its discretion when it determined that CYF proved termination was warranted under each prong of Section 2511(a)(8) as well as Section 2511(b). Having resolved that Father's appeal lacks merit, we do not reach the claims made by

CYF and the Child in their respective cross-appeals. As noted above, we need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. ***B.L.W.***, 843 A.2d at 384. Our disposition of Father's appeal means that even if ruled in favor of CYF or the Child, such a ruling would not have any legal force or effect. For that reason, the cross-appeals are moot. ***See Interest of D.R.W.***, 227 A.3d 905, 917 (Pa. Super. 2020) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.").

Order affirmed. Cross-appeals dismissed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/3/2023

- 19 -